# IN RE AZIZA S.-B. ET AL.*
## (AC 34223)

Lavine, Espinosa and Peters, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

640

Argued May 29—officially released October 1, 2012**

*Elizabeth Knight Adams*, for the appellant (respondent father).

*Carolyn A. Signorelli*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Charlene W. Spencer* and *Benjamin Zivyon*, assistant attorneys general, for the appellee (petitioner).

*Opinion*

LAVINE, J. The respondent father, Eric B., appeals from the judgments of the trial court terminating his parental rights as to three of his minor children,[1] pursuant to General Statutes § 17a-112 (j) (3) (B) (i), for

---

** October 1, 2012, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The parental rights of the children's mother, Stacey S., also were terminated by the court. See *In re Messiah S.*, 138 Conn. App. 606, 53 A.3d 224 (2012). Stacey S. is not a party to this appeal. In this opinion, we refer to Eric B. as the respondent.

failure to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time he could assume a responsible position in his children's lives.[2] The respondent claims that the court violated the Code of Judicial Conduct in that an appearance of impropriety permeated the trial and the court's decision.[3] More specifically, the respondent claims that the court (1) abused its discretion by failing to recuse itself and (2) failed to conduct an independent analysis of the best interests of the children. The respondent also claims that the court prejudged him and, therefore, the court's denial of his motion to transfer guardianship to his sister must be reversed. We affirm the judgments of the trial court.

The following procedural history is relevant to this appeal. In April, 2011, the petitioner, the commissioner of children and families, filed three petitions, one each for Aziza, Jazira and Kifayeh (children), to terminate the parental rights of the respondent for failure to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the children, he could assume a responsible position in their lives. The petitions alleged that the respondent is the father of each of the children, that the department of children and families (department) had made reasonable efforts

---

[2] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that . . . (3) . . . (B) the child . . . has been found by the Superior Court . . . to have been neglected or uncared for in a prior proceeding, or (ii) is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

[3] Counsel for the children has adopted the position of the respondent.

to reunify the children with the respondent and that the respondent was unable or unwilling to benefit from reunification.[4] Since they were found to be neglected on July 10, 2006, the children periodically have been under the protective supervision of the department. They were committed to the custody of the petitioner on October 29, 2009, and specific steps were ordered for the respondent on September 28, 2010, to facilitate the return of the children to him. On July 28, 2011, the respondent filed a motion to transfer guardianship of the children to his sister, Lisa B.-J.

Trial was held on November 4, 7 and 17, 2011. In a memorandum of decision filed on January 6, 2012, the court granted the petitions to terminate the respondent's parental rights on the ground of failure to rehabilitate and denied the motion to transfer guardianship to Lisa B.-J.

The court found that the respondent was born in 1962. He completed the twelfth grade and served in the Army from 1980 to 1983. He has been employed in the construction industry and currently works in the delicatessen department of a Stop and Shop supermarket.

The respondent reported that he first had a girlfriend when he was eleven years old. When he was fourteen, he met "Peaches," with whom he had a daughter. His relationship with Peaches lasted for eight months. At the age of fifteen, the respondent met Valerie, and they had two children during a four year relationship. When he was nineteen, the respondent began a two year relationship with Zelda, and they had one child. Although he reportedly was in a relationship with Zelda, the

---

[4] The court found that the department had made reasonable efforts to reunify the children with the respondent and that the respondent is unable or unwilling to benefit from reunification. On appeal, the respondent does not challenge those two findings of the court.

respondent also was seeing Takibah and her sister, Meta. The respondent and Meta had a child together. The respondent then met Linda, with whom he had a child, and Wendy, with whom he also had a child. The respondent met Lisa and married her in 1987. They had two children, but separated in 2000. In 2001, the respondent met Stacey S. when she was pregnant with the child of another man.[5] The respondent claims that he has regular contact with all of his children and their mothers.

The respondent was arrested seven times between September 16, 1982, and July 2, 2009, including one arrest for each of the following offenses: operating a motor vehicle while his operator's license was under suspension, sexual assault in the fourth degree, harassment in the second degree, criminal trespass, disorderly conduct, assault in the second degree and threatening, as well as violation of probation. In addition, he has two arrests for risk of injury to a child; three arrests for interfering with an officer/resisting arrest; four arrests for assault in the third degree; and five arrests for failure to appear. On June 13, 2009, the respondent was charged with assault in the third degree, breach of the peace in the second degree and risk of injury to a child arising from his assault of Stacey S., which took place in front of the children. He was incarcerated and ordered to have no contact with Stacey S. He was placed on probation on July 24, 2009, when he returned to the family home. He admits to trying marijuana when he was in high school but denies any history of substance abuse, although he tested positive for cocaine on May 13, 2011. He claims to drink beer socially.

The department has been involved with Stacey S. since December, 2001, due to issues of substance abuse, ·

---

[5] The respondent claims to be the psychological parent of the child, Messiah.

transience, mental health problems, financial instability and, more recently, domestic violence. She was born in 1972, graduated from the University of Hartford and, in 1996, received a master's degree in political theory from the University of Connecticut. She has been employed as a teacher at a group home, a librarian and a paralegal. She also was employed by a mortgage company. At trial, the court found that her employment was of a more menial nature. Stacey S. has never married. She denies that she has any substance abuse issues. Prior to trial in November, 2011, she was extremely reluctant to submit to hair testing. Her Breathalyzer test on April 19, 2011, was positive for alcohol.

After college, Stacey S. was in a five year relationship and gave birth to a daughter who was adopted by a close friend. In 2001, she gave birth to a son fathered by a different man and entered into a relationship with the respondent. In 2002, the family moved to Washington, D.C., where Aziza was born in 2003. Two years later, they moved to Las Vegas, where Jazira was born. The family returned to Connecticut, and Kifayeh was born in Rhode Island in October, 2005. Eric B., Jr., was born in Connecticut in October, 2007. A nurse at the hospital informed the department that Stacey S. tested positive for cocaine and alcohol at the time Eric B., Jr., was born. The petitioner assumed custody of Eric B., Jr., and in July, 2010, the parental rights of the respondent and Stacey S. as to Eric B., Jr., were terminated.

The court found that from time to time, the respondent and Stacey S. may have separated, but at the time of trial, they were involved in marriage counseling with a view toward marriage. The two of them continue to avoid the therapeutic programs scheduled by the department. They attend such programs sporadically, at best. The court found deep concern over their lack of attention ("no show, no call") to substance abuse

tests that were scheduled by the department. Since the respondent tested positive for cocaine on April 29, 2011, he has avoided further testing and wears his hair too short to be tested.

The court made factual findings with regard to each of the children as well. Aziza was born in Washington, D.C., in 2003. A multidisciplinary study was administered to her in November, 2009, and produced at-risk scores indicating that she has difficulty adapting to changing situations and environments. She sometimes struggles to communicate effectively with others. Aziza attended the Abundant Family Counseling Center weekly from December, 2009, through May, 2010. Individual counseling helped her make the transition into her foster family. During therapy, Aziza reported being happy to see Stacey S. during visits, but also was scared and sad. She witnessed domestic violence in June, 2009. When Aziza was interviewed by department personnel, she reported that "Daddy doesn't come home sometimes," and, "sometimes Daddy is mad and angry and fights with mommy." She has witnessed the respondent kick and scratch Stacey S. Aziza claimed that the respondent screamed at Stacey S. and the children, which scared her. She reported that the children hid "behind chairs, in our rooms, everywhere."

Aziza lives in the same foster home with Messiah. Aziza transitioned to the foster home well. She has bonded with her foster mother, but expressed a desire to be at home with her parents. Mary M., her foster parent, has expressed a willingness to adopt Aziza if she becomes legally free for adoption. At the time of trial, Aziza was in the third grade and doing well.

Jazira was seven years old at the time of trial. She attended the Abundant Life Counseling Center from February through August, 2010, and her foster mother has reported positive changes in her behavior. Jazira

has reported seeing violence in her home: "[D]addy picked up a chair and threw it at [M]ommy," which scared her. She was in the second grade and continues to make progress in all areas. She and her brother, Kifayeh, were placed together in the same foster home. She is bonded with Messiah and Aziza, whom she sees during supervised visitation, as well as on weekends.

Kifayeh was six at the time of trial and lives in the same foster home with Jazira. He, too, witnessed the domestic violence episode between his parents in June, 2009. He reported seeing Stacey S. being choked by the respondent. He is scared when his parents fight, cries because of it and hides under the kitchen table. When Kifayeh initially was placed with his foster mother, Nancy A., there were concerns because he cried for a long time before falling asleep. He received counseling to address that issue. Kifayeh was in the first grade at the time of trial and doing well. He is developmentally on target and presents no concerns. He visits with his parents, half brother and sisters weekly.

The court found by clear and convincing evidence that the department had made reasonable efforts to reunite the respondent with the children; some of the efforts were extraordinary. Time after time services and programs have been offered to the respondent, only to have him refuse to cooperate or leave the program before it was completed. He has not shown the ability to gain insight into his failings as a parent and has proven unable to rehabilitate and provide the care that his children require. The respondent's continued incarceration and the situations in which he finds himself at particular facilities make efforts extraordinarily difficult. The respondent is unwilling or unable to benefit from efforts because he has been unable to show progress in his rehabilitation with regard to mental health, substance abuse, parenting, anger management, domestic violence, housing and employment issues. The

department has been involved with this family since 2005 when Stacey S. tested positive for cocaine while she was pregnant with Kifayeh.

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights [under § 17a-112 (j)] exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child." (Internal quotation marks omitted.) *In re Rafael S.*, 125 Conn. App. 605, 610–11, 9 A.3d 417 (2010).

The court cited the law that requires it "to find, by clear and convincing evidence, that the level of rehabilitation [the respondent] has achieved, if any, falls short of that which would reasonably encourage a belief that at some future date [he] can assume a responsible position in [his children's] life." (Internal quotation marks omitted.) *In re Anvahnay S.*, 128 Conn. App. 186, 195, 16 A.3d 1244 (2011). "[I]n assessing rehabilitation, the critical issue is not whether the [respondent has] improved [his] ability to manage [his] own life, but rather whether [he] has gained the ability to care for the particular needs of the [children] at issue." (Internal quotation marks omitted.) *In re Sarah Ann K.*, 57 Conn. App. 441, 448, 749 A.2d 77 (2000). The court is to consider whether the age and needs of the children would support allowance of further time for the respondent to rehabilitate. See *In re Luis C.*, 210 Conn. 157, 167–68, 554 A.2d 722 (1989). In determining whether further allowance of a reasonable period of time would promote rehabilitation, a court may consider efforts made since the date of the filing of the petition to terminate

parental rights. *In re Sarah M.*, 19 Conn. App. 371, 377, 562 A.2d 566 (1989).

The court found that since 2001, the respondent had a history very similar to that of Stacey S.; see *In re Messiah S.*, 138 Conn. App. 606, 53 A.3d 224 (2012); and that he would not be able to assume a responsible position in the lives of the children within a reasonable period of time. It also found that it is unclear how long the department has been involved with the respondent since his first child was born when he was fourteen years old. The respondent fathered nine children with seven different women before becoming associated with Stacey S. in 2001. With Stacey S., he has fathered the children who are the subject of this appeal and one other child, for whom he consented to the termination of his parental rights. All of the respondent's children who were born prior to 2001 have been parented and supported by their respective mothers. The respondent claims that he has had and continues to have a relationship with all of his children and their families.

With regard to the respondent's history of substance abuse, the court found that he has been extremely resistant, evasive and belligerent in his dealings with program providers and department personnel. He exhibits a secretive, untruthful character, and is distrustful of social workers. He lacks candor and at times displays a combative side. When the respondent was confronted on August 8, 2011, with the fact that he was talking to the children about returning to his home, he insisted that he could "speak anything he wanted with his children." The department confirmed that the respondent had relayed to at least one of the children that the department was coming to take the children to the home of Lisa B.-J., who would return them to the respondent and Stacey S. The court found the respondent's actions disconcerting and disruptive to the well-being of the children.

Throughout his involvement with the department, the respondent has tested positive for cocaine, including on April 29 and May 13, 2011, despite the programs and services offered to him. He attends such programs sporadically, if at all. The respondent refused to authorize a request for hair segmentation testing made by the department. Since May 13, 2011, the department made at least twenty attempts to schedule substance abuse testing for the respondent and Stacey S., but neither of them appeared at the scheduled time or had an excuse for not participating.

The court found that court-ordered specific steps for the respondent were issued on September 28, 2010, to facilitate reunification of the children. The respondent has been noncompliant overall. He has not permitted home visits since March 13, 2010. He has refused to attend most counseling arrangements, recently refused substance abuse testing, has not made progress toward identified goals, has been resistant to signing releases and has been involved in the criminal justice system. On June 16, 2009, the respondent was charged with assault in the third degree, breach of the peace in the second degree and risk of injury to a child when he physically assaulted Stacey S. As a result of the assault, a full protective order was issued against the respondent. When the protective order expired, the respondent was placed on two years of probation. On January 5, 2010, the respondent's probation officer informed the department that the respondent was discharged unsuccessfully from the domestic violence counseling ordered as a condition of probation because he had attended only four out of nine sessions. The respondent later completed the twenty-six week program.

The court found that, although a witness from Community Health Services testified that the respondent had produced negative urine tests for more than two years, during that time, testing of the respondent's hair

was positive for cocaine. The respondent has evaded hair testing and has ongoing issues maintaining sobriety. The children have witnessed domestic violence at home, which causes them to run and hide. The court found that the respondent is unable to safely parent his children, who need a safe, nurturing home environment. The respondent has not successfully rehabilitated from abusing illegal substances and has been physically abusive to Stacey S. The court concluded that the children are in need of a permanent home.

The court found "interesting" that the attorneys for the children, Stacey S. and the respondent, argued that granting guardianship of the children to Lisa B.-J. was in the best interests of the children rather than reunification with the respondent and Stacey S. The court found it abundantly clear that the children "desperately" require stability, especially given their ages: eight, seven and six. The continued uncertainty of their future has a traumatic effect on them, and the respondent's suggestion that reunification is the ultimate intention, is "devastating" to their well-being.

The court noted that a parent's failure to appreciate the risks to children posed by the other parent's having access to them can provide a sufficient legal basis to find that the parent has failed to rehabilitate. See *In re Ellis V.*, 120 Conn. App. 523, 533, 992 A.2d 362 (2010). A parent who remained in an unstable and chaotic relationship has been found to have failed to rehabilitate. *In re Samantha C.*, 268 Conn. 614, 624–25, 847 A.2d 883 (2004). The court found that, although there was some evidence that the respondent and Stacey S. had separated, there was ample evidence that they still are in an intimate relationship. The testimony was undisputed that the respondent not only minimizes his own substance abuse issues, but also Stacey S.'s. Counsel for Stacey S. acknowledged that she is a "functioning

addict," "an addict in recovery" and that "she did the best she could" in the programs offered to her.

The court found by clear and convincing evidence that the petitioner had proved the statutory ground that the respondent had failed to rehabilitate. He did not comply fully with the steps ordered by the court on September 28, 2010. During a hearing on a motion to compel, he was ordered to sign releases permitting the department to obtain information. On April 29, 2011, he tested positive for cocaine use.

The court also made the findings required by § 17a-112 (k), particularly that the respondent, Stacey S. and the children have a bond. The children see their parents on weekends, engage in special visits and participate in telephone conversations. The children also have a bond with their foster parents, who are sisters. The foster parents often visit each other's homes to ensure that the children remain bonded. The children all attend the same school. The court found that it was in the best interests of the children to terminate the respondent's parental rights. The court did so by applying the appropriate legal standards to the clear and convincing facts of this case.

In its memorandum of decision, the court also ruled on the respondent's motion to transfer guardianship of the children to Lisa B.-J., his sister. During final argument, counsel for the respondent and the children urged the court to grant the motion to transfer guardianship. The court made the following findings. At some earlier time, the department assessed whether Lisa B.-J. could be a resource as the children's guardian. At that time, she was not considered to be a suitable placement because one of her own children was involved in the criminal justice system. When Lisa B.-J.'s troubled child left her home, she obtained a foster care license. The court opined that obtaining a license to become a foster

parent, however, is just the beginning and that child placement is contingent on many additional factors that Lisa B.-J. had not addressed.

On the basis of Lisa B.-J.'s testimony, the court found that she knew the children, had visited them on occasion, was employed and maintained a comfortable home. The main reason she wished to be named guardian of the children, however, was to help the respondent, when she learned that he was in trouble. She has not considered how she would parent the children, given their specific needs. Moreover, the court found that Lisa B.-J. did not know that Eric B., Jr., had been removed from his parents' care and adopted. She also did not seem to be aware that the respondent had other children who have been in the care of their mothers since each of them was born. She was not interested in knowing that the respondent became a father when he was fourteen years old or that he lived the better part of his forty-nine years without having to support, provide housing for or parent his other children in any meaningful way.

On more than one occasion, the children reported that Lisa B.-J. had told them that she wanted to be their guardian so that they could be returned to their parents. The respondent also led the children to believe that they would be returned to him and Stacey S. if Lisa B.-J. were their guardian. The court found that the respondent had something other than permanency in mind when he admitted making those statements to the children and insisted that he would continue to tell them whatever he desired. The court found, however, that it was "abundantly clear" that Lisa B.-J. has very little knowledge with regard to the children and was interested only in helping her brother. The court concluded that Lisa B.-J.'s goal was not to provide a meaningful family situation with permanency, stability and the chance for a productive future for the children. The

foster parents, however, could make those opportunities possible. The foster parents care for the children extremely well and are bonded with them. The court denied the motion to transfer guardianship to Lisa B.-J. The respondent appealed.

On appeal, the respondent claims that an appearance of judicial impropriety permeated the trial and the court's decision in violation of rule 2.2 of the Code of Judicial Conduct.[6] The respondent claims that the court (1) abused its discretion by denying the "respondents' " motion for recusal,[7] (2) violated the principles of impartiality and fairness when it copied its best interest analysis from prior unrelated cases and failed to conduct an independent analysis of the best interests of the children as required by § 17a-112 (j) (2), and (3) denied his motion to transfer guardianship of the children to Lisa B.-J. We affirm the judgments of the trial court.

Our review of the record discloses that although the court at times was impatient with all counsel, sarcastic and gruff, a judicial temperament that is inappropriate for the trial court, the court's memorandum of decision reveals that the court's findings and legal conclusions are supported by evidence in the record. Unlike the case of *In re Nathan B.*, 116 Conn. App. 521, 977 A.2d 224 (2009), the record does not disclose that the court had prejudged the respondent's credibility or the matter before it.

I

The respondent first claims that the court abused its discretion "in denying the respondents' motion for

___

[6] Rule 2.2 of the Code of Judicial Conduct provides: "A judge shall uphold and apply the law and shall perform all duties of judicial office fairly and impartially." The respondent relies specifically on comment (1), which states: "To ensure impartiality and fairness to all parties, a judge must be objective and open-minded."

[7] We have quoted the respondent's claim as articulated in his brief. Although he used the plural possessive "respondents'," the record demonstrates that he did not ask the court to recuse itself.

recusal after asking questions of the [department] witness that demonstrated bias toward" the petitioner's case.[8] Because the respondent failed to preserve this claim at trial, we decline to afford it review.

The respondent points to several portions of the transcript as the basis of his claim. The portions identified by the respondent reveal that the court interjected questions during the cross-examination of a department supervisor by counsel for Stacey S. and criticized the manner in which counsel was questioning the witness. The transcript of the second day of trial reveals the following:

"The Court: You know, all these questions you answer yes or no. Go ahead. You're just giving her some latitude here because the question you are asking is way beyond what a worker or what a supervisor does. It's done up here. But go ahead. What are you looking at him for?

"[Counsel for Stacey S.]: Your Honor, I—

"The Court: No, I would like to know. I just want you to move along. How are [you] going to ask another question if you wait a minute or so to ask another question? Please move on.

"[Counsel for Stacey S.]: If I could just have a second?

"The Court: Let's take a ten minute recess.

\* \* \*

"The Court: The court recessed so [counsel for Stacey S.] and [the respondent's counsel] could confer. And now they're back.

"[Counsel for Stacey S.]: It's with a heavy heart, Your Honor, that I must respectfully request the court to recuse itself.

"[The Petitioner's Counsel]: Oh, come on.

"The Court: Denied. I've heard this four or five times, and you take an appeal. That's what you do.

---

[8] See footnote 7 of this opinion.

"[Counsel for Stacey S.]: If I could state the reasons, my reasons?

"The Court: State your reasons."

Only counsel for Stacey S. asked the court to recuse itself. Counsel for the respondent did not join in the oral motion for the court to recuse itself and did not later file a written motion asking the court to recuse itself but continued trying the case to its completion without seeking to have the court recuse itself. By failing to ask the court to recuse itself, the respondent failed to preserve his own claim of judicial bias for appeal. See, e.g., *Doody* v. *Doody*, 99 Conn. App. 512, 522–23 and 522 n.8, 914 A.2d 1058 (2007); Practice Book § 1-23.

Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . ." "We have repeatedly held that this court will not consider claimed errors on the part of the trial court unless it appears on the record that the question was distinctly raised at trial *and was ruled upon and decided by the court* adversely to the appellant's claim." (Emphasis in original; internal quotation marks omitted.) *In re Emerald C.*, 108 Conn. App. 839, 852 n.9, 949 A.2d 1266, cert. denied, 289 Conn. 923, 958 A.2d 150 (2008). Because the respondent failed to seek the recusal of the court at trial, we will not review his claim on appeal.[9]

II

The respondent's second claim is that the court "violated the principles of impartiality and fairness when

[9] Stacey S. also appealed from the termination of her parental rights as to the children. In her appeal, she claimed that the court abused its discretion by denying her motion to recuse. Because she raised the claim at trial and the court ruled on it, it was preserved for appellate review. We reviewed her claim, but found that the court did not abuse its discretion by denying the motion to recuse. See *In re Messiah S.*, supra, 138 Conn. App. 622–628.

it copied its best interest analysis from prior unrelated cases and failed to conduct any meaningful independent analysis of the best interests of the children as required by § 17a-112 (j) (2)." Although the respondent articulated the issue as one of partiality and fairness, claiming that the court failed to conduct any meaningful analysis of the best interests of the children, the substance of the argument in his brief is that the court did not "[weigh] the children's strong desire to return to their parents, and the significant benefit to the children of the relationship they have with their parents . . . ." We decline to address the issue as stated,[10] and we disagree with the substance of the argument that was briefed.

The essence of the respondent's argument is that the court did not weigh the evidence according to his wishes. Regardless of how the court stated its findings and conclusions, our review of the entire memorandum of decision demonstrates that the court was aware of the evidence presented. The court's conclusion that termination of the respondent's parental rights was in the best interests of the children is amply supported by the evidence presented by the petitioner. See *In re Halle T.*, 96 Conn. App. 815, 828, 902 A.2d 670 (critical issue is not how court reported findings but whether there is sufficient evidence in record provided by petitioner), cert. denied, 280 Conn. 924, 908 A.2d 1087 (2006).

---

[10] We decline to review the fairness and impartiality issue because the respondent's brief is devoid of any legal analysis as to that claim. "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Rapoport*, 119 Conn. App. 269, 280, 987 A.2d 1075, cert. denied, 297 Conn. 907, 995 A.2d 639 (2010).

In her appeal, Stacey S. claimed that "when undertaking its analysis of the best interests of the children, the court copied 'almost word-for-word' the analysis it used in prior unrelated and factually distinct cases." *In re Messiah S.*, supra, 138 Conn. App. 628. We rejected her claim. Id., 633.

"Our standard of review on appeal from a termination of parental rights is whether the challenged findings are clearly erroneous. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous." (Citation omitted; internal quotation marks omitted.) *In re Sheena I.*, 63 Conn. App. 713, 719, 778 A.2d 997 (2001). Importantly, the respondent has not challenged the court's finding that he failed to rehabilitate or its findings made pursuant to § 17a-112 (k). In his brief, he concedes that he continues to deal with substance abuse, but claims that he has made improvements.

The respondent specifically claims that the court in its analysis failed to consider the testimony of the children's foster parents or the attorney for the children. We disagree. "The court's decision must be read and construed in its entirety." *Mafcote Industries, Inc.* v. *Gannicott Ltd.*, 60 Conn. App. 393, 396, 759 A.2d 153 (2000); see also *In re G.S.*, 117 Conn. App. 710, 719, 980 A.2d 935 (review court's decision in its entirety), cert. denied, 294 Conn. 919, 984 A.2d 67 (2009).

In its memorandum of decision, under the heading of "failure to rehabilitate," the court stated in part: "It is extremely interesting to the court that during final argument by the attorneys for the children, and [for the respondent and Stacey S.], all felt that the granting of guardianship to . . . Lisa B.-J. was in the best interests of the children, rather than reunification with the parents (although protective supervision was also mentioned). . . . These children have formed bonds with their respective foster parents, who happen to be sisters, and have a remarkable relationship with each other, which transfers to the children. The foster parents are willing to adopt the children and are agreeable

to maintaining a relationship with the children's parents. The children are in need of permanency and stability in their lives, and this is not possible with [Stacey S.'s] unresolved issues."

As to the respondent, the court found that he continued to test positive for cocaine use up to April 29, 2011, and afterward evaded scheduled hair tests. He continues to have issues maintaining sobriety. The children have disclosed that they witnessed domestic violence in the home that causes them to run and hide. The respondent is unable to parent safely his children and has not rehabilitated from abusing illegal substances and has been abusive physically to Stacey S. The court concluded that the children are in need of a safe, nurturing environment and a permanent home. The respondent does not dispute the court's factual findings, and he does not dispute that the evidence supports those findings.

The court recognized the bond between the respondent and the children when it made the following finding as required by § 17a-112 (k): "Mother, [the respondent] and the children appear to have a bond. The children see their parents weekly, have engaged in special visits and participate in telephonic conversations. The children also appear bonded to their foster parents. The foster parents are sisters, and they often visit in each other's homes to ensure that the children remain bonded. The children all attend the same school." Given the portions of the memorandum of decision cited herein, we conclude that the court did, in fact, consider the wishes of the children and the counsel for all parties. The court considered, in conjunction with the evidence, the criteria that it must consider in any termination of parental rights case.

Contrary to the respondent's argument, the court is not required to accept his view of the evidence. "[I]t is

the exclusive province of the trier of fact to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony. . . . Thus, if the court's dispositive finding . . . was not clearly erroneous, then the judgment must be affirmed. . . . The function of the appellate court is to review, and not retry, the proceedings of the trial court." (Internal quotation marks omitted.) *LPP Mortgage, Ltd.* v. *Lynch*, 122 Conn. App. 686, 700, 1 A.3d 157 (2010).

The fact that the respondent does not challenge the court's having found by clear and convincing evidence that he has a serious substance abuse problem, that he minimizes Stacey S.'s numerous issues that she has failed to address and that he cannot provide a safe environment for the children undercuts his argument that termination of his parental rights is not in the best interests of his children. The respondent also ignores the fact that the court was aware of the children's bond with their parents as well as the fact that the children's foster parents supported that bond and do not want it broken. To that end, the court knew that the foster parents are willing to permit the children to remain in contact with the respondent and Stacey S. For all of these reasons, we conclude that the court did not fail to consider the relationship the children have with their parents, the testimony of the foster parents and the arguments of counsel.

III

In his third claim, the respondent claims that the court prejudged him and, therefore, its denial of his motion to transfer guardianship of the children to Lisa B.-J. must be reversed. Not only did the respondent fail to raise the claim at trial, thus preserving it for review, he also failed to adequately brief his claim.

In his brief, the respondent states, "[a]s set forth more fully above, the appearance of impropriety calls for a reversal of the court's denial of the [respondent's] motion." The respondent states that the court demonstrated bias toward him. As we stated in part I of this opinion, the respondent never asked the court to recuse itself. His briefing of this is one page in length. It contains no specific facts or references to the pages of the transcript; see Practice Book § 67-4 (d); and other than citing General Statutes § 46b-129 (j), which requires that the transfer of guardianship be in the best interest of the child, his brief cites no law that is analyzed with respect to the facts of this case.

Despite the lack of preservation and the inadequacy of the respondent's brief, we nonetheless conclude that the respondent's claim lacks merit. The respondent does not challenge the court's findings, by clear and convincing evidence, that (1) the children were found in a prior proceeding to be neglected, (2) the department made reasonable efforts to reunite him with the children, (3) specific steps were ordered for him, (4) he failed to rehabilitate and (4) termination of his parental rights is in the best interests of the children. See General Statutes § 17a-112 (j). The court's written decision denying the respondent's motion to transfer guardianship to Lisa B.-J. is devoid of any evidence of bias and is amply supported by the evidence in the record that the respondent sought the transfer of guardianship to Lisa B.-J. as a conduit for returning the children to him and Stacey S. "It is an elementary rule of law that the fact that a trial court rules adversely to a litigant, even if some of these rulings were to be determined on appeal to have been erroneous, does not demonstrate personal bias." (Internal quotation marks omitted.) *Wendt* v. *Wendt*, 59 Conn. App. 656, 694, 757 A.2d 1225, cert. denied, 255 Conn. 918, 763 A.2d 1044 (2000). In this case, we find no erroneous rulings or bias and conclude

that the court properly denied the motion to transfer guardianship.

The judgments are affirmed.

In this opinion the other judges concurred.