# IN RE JOURNEY L. ET AL.*
## (AC 35178)

Lavine, Keller and Bishop, Js.

Argued April 8—officially released May 7, 2013**

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** May 7, 2013, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*David J. Reich*, for the appellant (respondent mother).

*Susan T. Pearlman*, assistant attorney general, with whom were *Benjamin Zivyon*, assistant attorney general, and, on the brief, *George Jepsen*, attorney general, and *Michael Besso*, assistant attorney general, for the appellee (petitioner).

*Michael F. Miller*, for the minor children.

### Opinion

PER CURIAM. In this termination of parental rights appeal involving four minor children, the respondent mother claims that the trial court failed (1) to correctly apply the relevant law regarding her alleged failure to achieve a sufficient degree of personal rehabilitation by improperly considering her ability to parent all four children together rather than her ability to parent each child individually, and (2) to apply relevant law in its determination that it is in the best interests of all four children to terminate her parental rights instead of determining that it was in the best interest of each individual child.[1] We affirm the judgments of the trial court.[2]

---

[1] We note that, pursuant to Practice Book § 67-13, counsel for the minor children, who also served as their guardian ad litem, filed a statement urging this court to affirm the judgment of the trial court.

[2] In this opinion, we refer to the respondent mother as the respondent, as neither of the fathers appealed from the judgment terminating their parental rights.

The underlying facts and procedural history are set forth in the court's oral decision. Briefly stated, the respondent is the biological mother of the four minor children, J, born in 2005, S, born in 2007, K, born in 2008, and R, born in 2010. J, S and K have the same biological father. R has a different biological father. On October 8, 2010, an order granting temporary custody of the children to the petitioner, the commissioner of children and families (commissioner), was granted and later sustained on October 15, 2010. On January 6, 2011, the children were adjudicated neglected and, on April 14, 2011, committed to the care and custody of the commissioner.

Thereafter, on December 6, 2011, the commissioner filed petitions for termination of parental rights as to each of the four children on the ground that the child previously had been found to be neglected and that the respondent and each father had failed to achieve a degree of personal rehabilitation sufficient to encourage the belief that, within a reasonable time, they could assume a responsible position in the life of the child. The respondent and both fathers were served, and counsel was appointed to represent them. Counsel, who also served as their guardian ad litem, was appointed for the children. Subsequently, on February 15, 2012, the father of J, S and K consented to the termination of his parental rights, and, after a canvass by the court, his parental rights to the three children were terminated. On May 24, 2012, R's biological father consented to the termination of his parental rights, but the court withheld judgment on the petition to terminate his parental rights, pending a hearing on the petitions to terminate the respondent's parental rights. On October 23, 2012, through its oral decision, the court terminated the parental rights of R's father and terminated the parental rights of the respondent as to her four children. This appeal followed.

"Our standard of review on appeal from a termination of parental rights is whether the challenged findings are clearly erroneous. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous." (Internal quotation marks omitted.) *In re Aziza S.-B.*, 138 Conn. App. 639, 657, 53 A.3d 1001 (2012).

In its oral decision, the court noted that, in the petitions, the commissioner alleged that the department of children and families (department) had made reasonable efforts to reunify the children with the respondent or that the respondent was unable or unwilling to benefit from reunification efforts; that the children had been found in a prior proceeding to have been neglected and uncared for; that the respondent had failed to achieve the degree of personal rehabilitation that would encourage the belief that, within a reasonable time, considering the ages and needs of the children, the respondent could assume a responsible position in the lives of the children; and that it is in the children's best interest to terminate the respondent's parental rights. In making these allegations, the commissioner essentially tracked the statutory scheme for the termination of parental rights pursuant to General Statutes § 17a-112 (j) (3) (B) (i).

In its oral decision, the court noted that it heard evidence from two therapists, a sexual abuse evaluator, the assigned department caseworker, and David Tobin, whom the court recognized as an expert in clinical and forensic psychology. The court noted, as well, that it heard testimony from the provider of supervised visitation and integrative parenting and from the pastor of the church that the respondent attended. The court also received numerous exhibits into evidence.

With respect to the allegation that the respondent had failed to achieve personal rehabilitation pursuant to § 17a-112 (j) (3) (B) (i), the court made specific findings as to the circumstances and deficits of each child and the respondent's failings in regard to his or her care. The court found, as to R, that following her birth, the Lawrence & Memorial Hospital had significant concerns "based on the mother's noncompliance with prenatal care and mother's failure to maintain her own diabetic controls." The court noted that R was born with respiratory distress, sugar control issues and feeding problems and that she had been in the neonatal intensive care unit. As to S and K, the court found that both children had been diagnosed with a condition known as "failure-to-thrive" and that the respondent had missed several follow-up appointments, including three referrals to a specialist for S, and that S had scoliosis and a vertebral fusion, a severe hearing deficit as well as bilateral hip dysplasia, which required corrective surgery. The court observed, as well, that both J and S had serious emotional and behavioral issues. The court noted that K's pediatrician had reported to the department that K had a feeding tube, and that the respondent was not following up as necessary with the Connecticut Children's Medical Center regarding care of the tube. The court also found that K also had significant language delays. Finally, in regard to the condition and specialized needs of the children, the court noted that J had to have part of a lung removed and was found to have toxic lead levels. The court concluded that before the children were removed from the respondent's care, conditions in the family home were "chaotic, dangerous, and the children's needs were unmet." Since their removal, the court observed, the children's medical and behavioral issues have improved.

As to the respondent's failure to achieve personal rehabilitation, the court found that Tobin testified that

the respondent "had inadequate coping skills, little tolerance for frustration, and signs of a severe impairment in her reality testing. He further noted that [the respondent] had a personality disorder with dependent features and little insight into the way she neglected her children." While the court noted that the respondent had positive and reciprocated feelings for J and S, the court also noted that the respondent "did not understand her children's special needs or have the capacity to meet them."

With respect to the specific steps the respondent was ordered to take in order to address her parenting deficits, the court found that, while she had begun individual therapy with a therapist with whom she developed a positive relationship, the respondent refused to engage with a different therapist once her initial therapist moved from Norwich to Colchester or to travel the relatively short distance from Norwich to Colchester to continue with her original therapist. Tobin considered the respondent's failure to continue individual therapy as indicative of her "inability to understand her children's special needs and to develop the capacity to meet them." The court further observed that Tobin had testified persuasively that the respondent had little insight into her parenting deficits and had been unsuccessful in her therapeutic interventions. The court concluded: "The department has made reasonable efforts to reunify with [the respondent], but [she] has been unable to obtain the necessary insight or skills to parent her children, and there is no reasonable prospect that [the respondent] will obtain them or rehabilitate sufficiently in the foreseeable future to play a responsible position in the life of her children." The court found, as well, that it was in the best interest of the children that the respondent's parental rights, as to all of them, be terminated.

The essence of the respondent's claim on appeal is that the court did not focus on her efforts to achieve rehabilitation as to each child or her ability to care for each child but, rather, made an assessment only of her ability to care for the children as a group. It is true, as the respondent points out, that, in stating its conclusions, the court observed that the respondent did not have the ability to care for all four children, and it is also true that some of the evidence adduced at trial pointed to the respondent's inability to care for four children with specialized needs and deficits. Notwithstanding the court's choice of language, however, it is clear from the court's oral decision that the court considered the respondent's failure to achieve personal rehabilitation as pertaining to her unsuitability to parent any one of these children and not simply the four children as a group. Additionally, as to the court's choice of language: "The critical issue is not how the court reported its findings but whether sufficient evidence [in the record] supported the court's finding that the petitioner proved, by clear and convincing evidence . . . that termination was in the best interests of the children." (Citation omitted; internal quotation marks omitted.) *In re Messiah S.*, 138 Conn. App. 606, 629, 53 A.3d 224, cert. denied, 307 Conn. 935, 56 A.3d 712 (2012).

The court's decision clearly implies that the court found that the respondent's failure to continue in therapy, her lack of insight, and her impaired reality testing bear on her capacity to be a parent. In short, while the court expressly found the respondent incapable of parenting all four children, within its finding is the clear implication that the respondent lacks the basic insights and capacities to parent any of the individual children, each of whom the court found had significant deficits and attendant needs that were unmet by the respondent. The record provides clear and convincing support for the court's conclusions in this regard. Similarly, the

court's conclusions regarding the best interests of the children flowed, reasonably, from its assessment of the children's needs and the respondent's inability to meet them. For the foregoing reasons, we find no fault with the court's factual conclusions and legal analysis leading to its determination to terminate the respondent's parental rights as to each child.

The judgments are affirmed.