******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE NIOSHKA A. N.*
(AC 37955)

Sheldon, Prescott and Flynn, Js.

*Argued October 8—officially released November 23, 2015**

(Appeal from Superior Court, judicial district of New Britain, Juvenile Matters, Cohn, J.)

*Michael D. Day*, for the appellant (respondent mother).

*Jessica C. Torres*, assistant attorney general, with

whom, on the brief, were *George Jepsen*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Opinion*

PER CURIAM. The respondent mother appeals from the judgment of the trial court terminating her parental rights with respect to her daughter, Nioshka.[1] We affirm the judgment of the trial court.

The respondent challenges the trial court's determination that the termination of her parental rights was in the best interest of Nioshka. The respondent bases this challenge on two alleged errors in the factual findings made by the trial court pursuant to General Statutes § 17a-112 (k) (2) and (3).[2] The challenged findings are that the Department of Children and Families (department) made reasonable efforts to reunify the respondent with her child and that the department, with the approval of the court, had followed the specific steps for reunification. The respondent disputes these findings, and the best interest determination based in part upon them, because of the department's alleged failure to follow the recommendations of the respondent's court-appointed psychological evaluator, Eric Frazer, to: (1) increase the respondent's visitation with Nioshka and vary the location of the visits; and (2) have biweekly communication between the respondent's supervising parenting therapist and her treating therapist.

The following facts are relevant to this appeal. Nioshka, the respondent's third child,[3] was born on June 23, 2014. Four days later, the petitioner, the Commissioner of Children and Families, filed a coterminous petition[4] with respect to Nioshka on the basis of, inter alia, the respondent's prior neglect of her older children, her significant mental health issues, her difficulty engaging with and relating to her children in a developmentally appropriate way, and her failure to benefit from the services offered to her while under the department's supervision.

After a two day trial, the trial court first determined, as alleged in the neglect petition, that Nioshka was neglected as of the date of the filing of the petition.[5] Then it determined, in the adjudicatory phase[6] of proceedings under the termination of parental rights petition, that statutory grounds existed for the termination of the respondent's parental rights with respect to Nioshka because, despite the department's reasonable efforts to reunify her with Nioshka, the respondent had failed to rehabilitate within the meaning of § 17a-112 (j) (3) (E).[7] The court based its conclusion as to the respondent's failure to rehabilitate on findings that, although the respondent had made improvements in her housing situation, her employment, taking her medication, and addressing her mental health issues, she had failed to "[develop] sufficient parenting skills," and thus her "present condition . . . [did] not 'encourage the belief that within a reasonable time, considering the age and needs of the child, [she] could assume a

responsible position in the life of the child . . . .' " On that score, the trial court took particular note of the respondent's inability to soothe Nioshka and her tendency to handle her roughly during visits. Second, Dr. Frazer testified that the respondent's challenges would not resolve in a reasonable time and said that it was in Nioshka's best interest to remain in her foster home. Third, and most troubling for the trial court, was the respondent's continuing contact with Nioshka's father, a convicted sex offender who was prohibited from having contact with any children,[8] about which she lied to Dr. Frazer. The respondent, it found, maintained contact with the father even after he had violated his parole in 2013 as a direct result of her allowing him to have direct contact with one of her other children. The respondent does not challenge the trial court's adjudicatory determination or any of the predicate factual findings on which it was based.

Finally, in the dispositional phase of the termination proceeding, the trial court determined that termination of the respondent's parental rights was in Nioshka's best interest. It based that determination upon the following findings of fact, which it made as required by § 17a-112 (k): "(1) Appropriate and timely services were provided by [the department] to [the respondent], both before and after the filing of the [termination of parental rights] petition. [The respondent] has not completed certain of the services recommended, while others were completed. [The respondent] is compliant with her medication regimen. She has not shown a sufficient ability to parent. (2) The court finds that [the department] made reasonable efforts to reunify [the respondent] with her child by putting services in place. (3) [The department], with the approval of the court, set reasonable and realistic specific steps in order to reunify [the respondent] with her child. The [respondent] was only partially successful in meeting her steps. (4) [The respondent] and child have a good relationship, but not a successful one based on [the respondent's] parental relationship . . . . (5) The child is eight months old. As indicated, the time to resolve her placement is of the essence. (6) [The respondent] has not sufficiently adjusted her circumstances to return the child to her care in the foreseeable future. As indicated, she is still in need of further mental health counseling and her parenting skills are lacking. She has not recognized the fact that the biological father should not have a role in the child's life. (7) [The respondent] was not prevented from having a meaningful relationship with the child because of economics or by the unreasonable act of any person or agency, including the foster family, or [the department]. [The department] used reasonable efforts to encourage contact between the [respondent] and the child." In addition, the court noted that Nioshka had bonded with her foster parents, with whom she had been placed since her release from the hospital after her birth, and that the attorney for

the child had recommended termination.

The respondent challenges the trial court's best interest determination and two of the findings on which it was based, claiming that, by failing to implement Dr. Frazer's recommendations, the department failed both to make reasonable efforts to reunify her with her daughter and to follow the specific step imposed upon it by court order to "[i]mplement reasonable recommendations made by service providers . . . ."

"Our standard of review on appeal from a termination of parental rights is whether the challenged findings are clearly erroneous. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous." (Internal quotation marks omitted.) *In re Halle T.*, 96 Conn. App. 815, 822, 902 A.2d 670, cert. denied, 280 Conn. 924, 908 A.2d 1087 (2006).

We note initially that we disagree with the respondent's claim challenging the trial court's two factual findings on the basis of the department's alleged failure to implement Dr. Frazer's recommendations. Dr. Frazer initially concluded, and thus reported to the department, that there was a possibility that the respondent could improve her parenting skills to the point that reunification could occur. To facilitate such improvement, he made recommendations to the department to: (1) increase the respondent's visitation with Nioshka and vary the location of the visits; and (2) have biweekly communication between the respondent's supervising parenting therapist and her treating therapist. The respondent now argues that the department did not follow these recommendations. The evidence on the record, however, was that the department did attempt to facilitate communication between the respondent's therapists by ensuring that they received each other's contact information. There is also evidence of record showing that the department declined to implement Dr. Frazer's recommendations as to the frequency and location of visits on the basis of the social worker's observations of the respondent's chronic difficulties dealing with her daughter during visits.

Moreover, Dr. Frazer's initial conclusion that the respondent could improve her parenting skills changed markedly after he reviewed reports concerning the respondent's unsuccessful visits with Nioshka and learned that the respondent was continuing her relationship with Nioshka's father. Dr. Frazer thus concluded, in his testimony at trial, that, "[M]ore time [and] more treatment [for the respondent] is not likely to result in the kind of changes that would be commensurate with the child's needs and [in] the best interest of reunification." Thus, the trial court's findings that the department followed all court orders applicable to it, and in so

doing made reasonable efforts to reunify the respondent and her daughter, were not clearly erroneous.

Furthermore, even if the petitioner had failed to adduce any evidence that would have supported the court's two challenged findings under § 17a-112 (k) (2) and (3), the absence of such evidence would not have been dispositive on the issue of whether termination of the respondent's parental rights was in Nioshka's best interest. "In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the [respondent's] parental rights is not in the best interests of the child. In arriving at that decision, the court is mandated to consider and make written findings regarding [the] seven factors delineated in . . . § [17a-112 (k)] . . . ." (Internal quotation marks omitted.) *In re Halle T.*, supra, 96 Conn. App. 823. "These seven factors serve simply as guidelines to the court and are not statutory prerequisites that need to be proven before termination can be ordered . . . . We have held, however, that the petitioner is not required to prove *each* of the seven factors by clear and convincing evidence." (Citations omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) Id., 840. "Where . . . the record reveals that the trial court's ultimate conclusions [regarding termination of parental rights] are supported by clear and convincing evidence, we will not reach an opposite conclusion on the basis of any one segment of the many factors considered in a termination proceeding . . . ." (Internal quotation marks omitted.) Id., 840 n.20.

The ultimate question is, thus, whether the best interest determination of the trial court was clearly erroneous in light of the record as a whole. "[A]n appellate tribunal will not disturb a trial court's finding that termination of parental rights is in a child's best interest unless that finding is clearly erroneous. . . . A finding is clearly erroneous when either there is no evidence in the record to support it, or the reviewing court is left with the definite and firm conviction that a mistake has been made. . . .

"On appeal, our function is to determine whether the trial court's conclusion was factually supported and legally correct. . . . In doing so, however, [g]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [Rather] every reasonable presumption is made in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *In re Davonta V.*, 285 Conn. 483, 488, 940 A.2d 733 (2008). "Although a judge [charged with determining whether termination of parental rights

is in a child's best interest] is guided by legal principles, the ultimate decision [whether termination is justified] is intensely human. It is the judge in the courtroom who looks the witnesses in the eye, interprets their body language, listens to the inflections in their voices and otherwise assesses the subtleties that are not conveyed in the cold transcript." (Internal quotation marks omitted.) *In re Nevaeh W.*, 317 Conn. 723, 740, 120 A.3d 1177 (2015).

Accordingly, even if the department had unreasonably failed to implement Dr. Frazer's recommendations, the trial court's best interest determination would still have been amply supported on this record by its findings as to the other five factors set forth in § 17a-112 (k), which the respondent does not challenge on appeal. We are therefore not persuaded that the trial court's best interest determination was clearly erroneous.[9] Thus, the trial court did not err in terminating the respondent's parental rights.

The judgment is affirmed.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** November 23, 2015, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The father consented to the termination of his parental rights and did not participate in this appeal.

[2] General Statutes § 17a-112 (k) states: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; *(2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order*; (4) the feelings and emotional ties of the child with respect to the child's parents, any guardian of such child's person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions, and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent." (Emphasis added.)

[3] The respondent's parental rights as to her first child were terminated by consent in 2011. The respondent's second child was adjudicated neglected on May 29, 2013, and, on July 17, 2014, the court rendered a judgment terminating her parental rights regarding that child.

[4] A coterminous petition, as filed in this case, is "the simultaneous filing of a neglect petition and a termination of parental rights petition on behalf of the same child . . . ." (Internal quotation marks omitted.) *In re Brianna L.*, 139 Conn. App. 239, 247, 55 A.3d 572 (2012).

[5] "When coterminous petitions are filed, the judicial authority first determines by a fair preponderance of the evidence whether the child or youth is neglected, abused or uncared for; if so, then the judicial authority determines whether statutory grounds exist to terminate parental rights by clear and convincing evidence; if so, then the judicial authority determines whether termination of parental rights is in the best interests of the child or youth by clear and convincing evidence. If the judicial authority determines that termination grounds do not exist or termination of parental rights is not in the best interests of the child or youth, then the judicial authority may consider by a fair preponderance of the evidence any of the dispositional alternatives available under the neglect, abuse or uncared for petition." Practice Book § 35a-3.

[6] "A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights [under § 17a-112 (j)] exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child." (Internal quotation marks omitted.) *In re Aziza S.-B.*, 138 Conn. App. 639, 647, 53 A.3d 1001 (2012).

[7] General Statutes § 17a-112 (j) states in relevant part: "The Superior Court . . . may grant a petition [for termination of parental rights] if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent . . . (2) termination is in the best interest of the child, and (3) . . . (E) the parent of a child under the age of seven years who is neglected or uncared for, has failed, is unable or is unwilling to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child and such parent's parental rights of another child were previously terminated pursuant to a petition filed by the Commissioner of Children and Families . . . ."

We note that the respondent does not challenge the trial court's determination under § 17a-112 (j) (1) regarding the department's reasonable efforts. She affirmatively asserts in her reply brief that she "challenges two factual findings [made] pursuant to . . . § 17a-112 (k) (2) and (3) . . . . [The respondent] challenges whether termination is in the best interest of the minor child." (Citations omitted.) We accordingly address the respondent's claim regarding the department's reasonable efforts only within the context of § 17a-112 (k) (2).

[8] The father was convicted in 2003 of three counts of sexual assault in the first degree and three counts of illegal sexual contact with a minor, involving sexual intercourse with a twelve year old female.

[9] Although our case law has long established that the best interest determination is subject to clear error review, we are aware that our Supreme Court in *In re Shane M.*, 318 Conn. 569, 587–88, 122 A.3d 1247 (2015), held that the failure to rehabilitate ground set forth in § 17a-112 (j) (3) (B) is a legal determination subject to review under an evidentiary sufficiency standard, and that this court, in *In re James O.*, 160 Conn. App. 506, 522, A.3d , cert. granted on other grounds, 319 Conn. A.3d (2015), held that the same standard should apply to the reasonable efforts to reunify ground set forth in § 17a-112 (j) (1). We note that the respondent's claim does not implicate § 17a-112 (j) (1); see footnote 7 of this opinion; and we are disinclined to reverse decades of precedent from our Supreme Court by declaring that the best interest ground set forth in § 17a-112 (j) (2) is subject to similar analysis. That issue need not be decided for two reasons. First, the parties here have not briefed the issue. Second, the evidence in this case supports the trial court's judgment under both standards. Otherwise stated, if the evidence upon which we have relied in finding that the trial court's best interest determination was not clearly erroneous were considered under the evidentiary sufficiency standard, and, thus, was construed in the light most favorable to upholding the trial court's best interest determination; see *In re Shane M.*, supra, 588; that evidence, so construed, would be sufficient to prove by clear and convincing evidence that termination of the respondent's parental rights was in the best interest of the child.